In re Carol D. King, Myron Moskowitz appearing for appellant and Herb Fox appearing for Appley. Okay, Mr. Moskowitz, you want to reserve some time for rebuttal in this case? Yeah, I'll reserve five minutes if I need it. This this one is much shorter than the one involving Mr. King. Please go ahead. Ms. King is involved because she's also liable on this large judgment that Wolverine has, and it was decided that it'd be much easier to bring them both into a voluntary bankruptcy and deal with the whole thing together. These accusations I've made against Mr. King do not apply to Carole King. We're not making any claim that she's trying to manipulate anything. But the issue involving her is very simple. She has many fewer creditors, and her answer listed 13 creditors, which is one over the required amount to trigger Wolverine's duty to have at least three petitioning creditors. But three of those creditors that Ms. King listed, 13, were secured. And we claim they should be disqualified. That brings her total down to nine and removes the requirement that Wolverine bring in three creditors. And the argument is pretty simple. The statute itself is not clear on this. The legislative history is not clear on this. But as a policy matter, it really makes no sense to include secured creditors in the required 12, because you can't really bring them into the required three either on Wolverine's side, because these people have no incentive to participate in an involuntary bankruptcy. Well, doesn't your clients, doesn't Wolverine's participation kind of disprove that? I mean, remedies weren't working. Aren't there situations where a secured creditor would have a legitimate reason to seek relief in the bankruptcy court? That's a good point. The problem, it's a very practical problem, is at the present time, Wolverine's lien has been deemed inferior to Acro. Acro is one of the Mr. King's son. John controls a different John. And Acro has done everything they can to prevent Wolverine from collecting. But I think the broader question is, if you're saying as a policy matter, we should be excluding secured creditors because they really are somewhat indifferent to a bankruptcy, I don't think you can say that. I mean, there are situations where collateral might be in peril. There are situations where the debtor is acting out of trust. There's all kinds of reasons why a secured creditor could care deeply whether somebody's in a bankruptcy. Well, let me show that. I mean, if that's the particular situation. No, I'm not talking about a particular. I'm talking about a policy argument. We're talking about a policy argument. You have to think a little more broadly. It's not so much what's happening in this case, which you're basically saying this can never pertain. And I don't see how you can get there. Well, that's a good point. Maybe we shouldn't be saying never, but at least in this case. Can I ask you a more fundamental question with respect to the language of 303? What is the meaning of the word aggregate if it isn't that some creditors potentially may not be unsecured, but some might be? And as long as the total number comes up to the 18,600, that qualifies? I don't know. I mean, this question is not directly addressed by the legislation. You know, the main problem, I think, is not only that a fully secured creditor has no incentive to join the involuntary petition. It's got a very strong disincentive, because if there's no involuntary bankruptcy, then the secured creditor doesn't need anyone's permission to execute on its lane. But once you get in a bankruptcy court, you got to get permission and permission takes time and you may not get it. And meanwhile, you got an asset that you want to execute on. Fully secured creditors want to stay away from this thing. You're almost never going to get them to sign up. But, you know, once again, let me go back that this was decided on summary judgment and they had the burden of showing that, as the court pointed out, maybe these three secured creditors were not fully secured. Maybe they had junior liens. Maybe they did have an incentive to join. There was no evidence of that. Nothing. Well, the statute talks about aggregate debt. It doesn't talk about incentives one way or the other. So what's the Okay. I appreciate it. Okay. Okay. I'll reserve the rest of my time. Okay. Okay. Real good. Let's see. Mr Fox. Good morning, Your Honor. May it please the court. Herb Fox on behalf of Appellee Carol King. We see this question in the appeal from the Order of Dismissal as to Ms. King to be simply a question of straightforward statutory construction. The old act expressly excluded secured creditors from being counted. The current act, the Congress deleted that exclusion and that's sort of the end of the story. It's no longer the rule. I mean, it's a practical matter. If you only have one creditor, they would have to be under secured at least, right? But that's not what we're talking about here. That's right. Yeah. And, you know, as to the policy, you know, it's not for me or Mr. Moskowitz or respectfully this court. Congress has ruled in, chimed in, weighed in on the policy and decided that secured creditors can appear as petitioners and also be counted, which is really the issue here. I will add that just for the record purposes, we actually came in with, I believe, 44 creditors for Ms. King and the judge, the court excluded all but 13 of them. So this wasn't a willy-nilly decision. I think the court, Judge Cooker, went through the record and chopped off the creditors he thought were improperly joined but still left us with these 13. Can I raise something? Mr. Moskowitz has reserved a lot of time so he may get to this when he comes back to his portion. The argument about Section 1022 and a claim against a person, do you want to give us your thoughts about that? I, you know, to argue that the claims against property, claimants, that the parties who have claims against the property cannot join, I think undercuts the whole concept of having secured, of allowing secured creditors to participate in an involuntary. Does it follow that from secured creditors participating that non-recourse secured creditors should also be allowed to participate? I don't know that the, well, 303B doesn't really make a distinction between recourse and non-recourse. Yeah, no, I agree. I mean, the implication is if you read 1022, the claims against the debtor include claims against property of the debtor, there's sort of this reverse implication that by using person instead of debtor in 303. So that's where I think we're inquiring whether you have a, how do you think we should think of the word person in that circumstance? Right. I, we, we were, I know the issue came up during trial. It was, it was bandied about as a possible appellate issue for us and we abandoned that. Okay. So we'll leave it up to your good graces. I think, you know, again, we're going to need to look at, at congressional intent, if it's at all clear what Congress intended in terms of recourse versus non-recourse. The, you know, it also, this also intersects with, or could intersect with California community property law. And, you know, there are many situations in which both debtors, both spouses, I should say, are going to be held personally liable for debts against their jointly held, their community property. And, and, and you will veer off in that direction and it's a nightmare. I'll throw another idea out there and maybe nobody thinks this is interesting, but to the extent that the phrase is such person, one could argue that such person means it's referring back to a prior use of the word person in the same section. And if you do that, you see that the distinction really, the meaning of the distinction in the first instance is we're not talking about governmental entities. We're talking about individuals because they're simply not eligible for involuntary. So we're talking about individuals and we're talking about corporations. We're talking about partnerships and so on. That's, I mean, that's one way you could think about why person matters in that context, if it's such person. Right. And I don't know, I mean, if that's not, if that's of no interest to anybody, then we'll decide if it's, if it's, if it's of interest to us and we'll go from there. I think, you know, you might end up having to dig deeper into the nature of the debt. You know, if these are debts, I mean, this particular debt, you know, is a, is a secure debt against, against, against personal property, against a home, I should say real property. But, you know, the, the reality is that real property, you know, belongs to the person and, and, and, you know, and, and to just say you have no protection because it's only property does a disservice to their actual, you know, their actual lives. Yeah. I mean, one of the problems we have and everybody knows it is involuntaries are relatively few, the case law is relatively sparse. Congress has written sections and we're all trying to figure out what the heck they meant by them. And both of these appeals present really fun questions along those lines because Congress might have said more they didn't. So there we are. Unless the court has any further questions. Thank you very much. Thank you. All right, back to you, Mr. Moskovitz. Nine minutes and 15 seconds. Please go ahead. Okay. I don't think I'll need that much. So I agree our original position as to a blanket rule about secured predators. I think that doesn't work for the reasons the court pointed out, but I want to go back to this list that the debtor is required to provide in order to trigger the three that the petitioner has to come up with. What's that list for? Well, one of the purposes of the list I submit is to enable the petitioner to try to get other people to join them. All right. Now, as counsel in the prior case pointed out, you know, it wasn't easy to get someone like Fence Factory with a small debt, but fully secured predators are not going to join that petition. That part of the list is useless to them. If the Bank of America has the first deed of trust on the King's home, they're not coming in. There's no reason to. Involuntary bankruptcy can only hurt them. It's not going to help them. So it seems to me going back to this notion that this was the King's motion for summary judgment, they had the burden of showing that these three secured predators were in a position somewhat like Wolverine, where yes, they had a lien, but the lien was of dubious value. And there would be an incentive for a creditor like that to join with Wolverine and the insurance company of the West. But if those secured predators were fully secured, first liens on adequately valued property, they ain't coming in. So to me, that's the guts of the case. The language of the statute is unclear. As you pointed out, this is a rarely used statute. Congress had little reason to deal with these questions directly. But as a practical matter, this leaves the petitioner for an involuntary bankruptcy in a very difficult position, particularly when not Mrs. King, but Mr. King had his son buy up these other big debts of creditors who definitely would have come in. But they obviously wouldn't because they were trying to protect the Kings. They weren't trying to really collect their debts. There's no record of any of those three judgments having been paid, even a nickel. They're not there to be paid. They're there as a screen to protect the Kings. So this is another way that they're using to try to frustrate Wolverine's very legitimate evidence to collect this judgment. So I think the rule the court should adopt is the burden is on the debtor to show that the list of creditors in their 12 plus are real possibilities of joining the petition. Now, you know, I don't fault them for listing Fence Factory, which and another, you know, PG&E and things like that, which are unlikely that you're going, that's the nature of the problem. But with the secured creditors thing, no, provide more information about exactly what their situation is. Because if they had said on their list of creditors that one or more of their secured creditors was like Wolverine with a lien that's of dubious value, you can be sure that Wolverine would have approached them and we wouldn't be here. That's all I have unless there's any questions. Any questions? Okay, thank you very much. Thanks to both sides for your good arguments. The matter is submitted. Thank you. Thank you very much.
judges: Lafferty, Faris, and Spraker